**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER WILLIFORD,<br>247 Queens Lane,<br>Lexington, North Carolina 27292<br><br>        Plaintiff,<br><br>    v.<br><br>DANIEL P. DRISCOLL, in his official capacity<br>as Secretary of the Army,<br>U.S. Department of the Army<br>101 Army Pentagon<br>Washington, D.C. 20310<br><br>        Defendant. | Civil Action No. 1:26-cv-2732 |

**COMPLAINT**

Plaintiff Sergeant First Class Christopher Williford (Ret.) ("SFC Williford"), brings this Complaint by and through his undersigned counsel, and alleges as follows:

**NATURE OF ACTION**

1. This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, for judicial review of a final decision of the Army Combat-Related Special Compensation Board ("ACRSCB") denying SFC Williford's application for Combat-Related Special Compensation ("CRSC") benefits for Post-Traumatic Stress Disorder ("PTSD") and Traumatic Brain Injury ("TBI").

2. SFC Williford served honorably in the U.S. Army National Guard for 16 years, including approximately 2.5 years (three periods) of active service. His second period of active service occurred in Iraq and Kuwait during Operation Iraqi Freedom. During this service, SFC Williford was exposed to multiple explosions and witnessed a fellow soldier being shot—with half

his neck blown away—while serving alongside him on tower guard duty. SFC Williford's combat-related duties left him with numerous impairments, including PTSD, TBI, and various physical impairments.

3.      After being medically retired from service due to his PTSD, and since 2019, SFC Williford has attempted to obtain CRSC from the Department of the Army. The ACRSCB, however, has rejected his applications, disregarding and failing to engage with the credible and objective evidence SFC Williford submitted. That evidence includes a finding by the Army's own Physical Evaluation Board ("PEB") that his PTSD resulted from a combat-related injury and a command statement corroborating the combat-related events SFC Williford experienced.

4.      In 2022, the ACRSCB awarded SFC Williford CRSC benefits for tinnitus and bilateral hearing loss impairments as incurred through instrumentalities of war, but failed to acknowledge that SFC Williford's PTSD arises from the same instrumentalities of war.

5.      In 2025, the ACRSCB refused to award SFC Williford CRSC benefits for PTSD and TBI, despite evidence that these impairments are combat-related.

6.      The ACRSCB's October 28, 2025, decision denying SFC Williford's request for CRSC for PTSD and TBI was arbitrary, capricious, not supported by substantial evidence, and not in accordance with law. The ACRSCB's decision should be set aside and SFC Williford should be awarded the benefits he is due.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 706.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e). The Secretary of the Army's official address is 101 Army Pentagon, Washington, D.C. 20310, and the Secretary of the

Army performs a substantial part of his official duties in Washington, D.C.

## PARTIES

9.      SFC Williford is a citizen of the United States and a resident of North Carolina. SFC Williford first entered the military on January 3, 2003. He was elevated to active duty on three separate occasions. During his second period of active duty, SFC Williford was deployed to Kuwait and Iraq in support of Operation Iraqi Freedom. SFC Williford received numerous awards in connection with his military service, including the Iraq Campaign Medal with Campaign Star. SFC Williford was medically retired from the Army in 2019 due to PTSD.

10.     Defendant Daniel P. Driscoll is the Secretary of the Army and is sued in his official capacity. At all relevant times, the Secretary of the Army acted by and through the ACRSCB.

## STATUTORY AND REGULATORY BACKGROUND

### The Combat-Related Special Compensation Program

11.     Congress enacted the CRSC statute, 10 U.S.C. § 1413a, in 2002. It establishes a program for special compensation to military retirees who suffer from combat-related disabilities.

12.     To be eligible for CRSC, an applicant must be: (1) a military retiree; (2) "entitled to retired pay" (except in certain instances not relevant here); (3) with "a combat-related disability." *Id.* § 1413a(c).

13.     The CRSC statute defines a "combat-related disability," in pertinent part, as a disability "compensable under the laws administered by the Secretary of Veterans Affairs" and that was incurred: "(A) as a direct result of armed conflict; (B) while engaged in hazardous service; (C) in the performance of duty under conditions simulating war; or (D) through an instrumentality of war." 10 U.S.C. § 1413a(e)(2).

14.     The CRSC statute requires the Secretary of the Department of Defense (also known

as the Department of War) to prescribe procedures and criteria under which eligible service members may apply to the Secretary of their respective military departments for CRSC. 10 U.S.C. § 1413a(d). The statute further requires that these procedures "shall apply uniformly throughout the Department of Defense[,]" including the Army. 10 U.S.C. § 1413a(d).

15.    The Department of Defense has issued program guidance ("Program Guidance") that further defines the CRSC preliminary eligibility criteria.

16.    The Program Guidance requires CRSC determinations to be "based on the preponderance of available documentary information where quality of information is more important than quantity." Program Guidance, att. 1, at 9. Furthermore, "[a]ll relevant documentary information is to be weighed in relation to known facts and circumstances, and determinations will be made on the basis of credible, objective documentary information[.]" *Id.*

17.    The Program Guidance defines "armed conflict" to include "a war, expedition, occupation of an area or territory, battle, skirmish, raid, invasion, rebellion, insurrection, guerilla action, riot, or any other action in which Service members are engaged with a hostile or belligerent nation, faction, force, or terrorists." *Id.*, att. 1-1, at 1.

18.    Pursuant to the Program Guidance, disabilities incurred through an "instrumentality of war" need not have occurred during an actual period of war to be compensable under the CRSC program, as long as there is "a direct causal relationship between the instrumentality of war and the disability" and the disability was "incurred incident to a hazard or risk of the service." *Id.*

19.    The Program Guidance defines an instrumentality of war, in pertinent part, as a "vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence or injury." *Id.*, att. 1-1, at 2. The guidance further explains that "A determination that a disability is the result of an instrumentality of war may be made if the

disability was incurred in any period of service as a result of such diverse causes as wounds caused by a military weapon [or] . . . explosion of military ordnance. . . ." *Id.*

20.     The Program Guidance expressly recognizes that PTSD may qualify as a combat-related disability under 10 U.S.C. § 1413a(e)(2). *Id.*, att. 1, at 6 (listing PTSD under heading "Other Combat-Related Disabilities").

## FACTS

### SFC Williford's Military Service

21.     SFC Williford joined the North Carolina U.S. Army National Guard as a Motor Transport Operator on January 3, 2003. He was elevated to active duty on three separate occasions, with periods of honorable active service from: February 11, 2003, to June 6, 2003; September 14, 2004, to September 16, 2005; and May 16, 2013, to May 15, 2014.

22.     SFC Williford received several awards during his service, including: (1) Army Good Conduct Medal; (2) Army Reserve Component Achievement Medal (three times); (3) National Defense Service Award; (4) Global War on Terrorism Service Medal; (5) Iraq Campaign Medal with Campaign Star; (6) Army Service Ribbon; (7) Armed Forces Reserve Medal with M Device; and (8) Driver and Mechanic Badge with Driver-Wheeled Vehicle(s) Clasp.

### SFC Williford's Exposure to Combat and His Related Disabilities

23.     During his second stint of active duty, SFC Williford was deployed to Kuwait and Iraq from September 27, 2004, to March 3, 2005, in support of Operation Iraqi Freedom.

24.     While deployed to Iraq, SFC Williford was exposed on multiple occasions to direct and indirect fire as well as blasts from improvised explosive devices ("IEDs"), some of which caused him to lose consciousness. He was also present in his barracks when it was attacked with a rocket.

- 5 -

25. On one occasion, SFC Williford was leading a 28-vehicle motor convoy when the back of his vehicle was struck by an IED, which led to several wounded.

26. SFC Williford began experiencing symptoms of TBI immediately after hitting his head on the side of a truck during an IED blast while in Iraq. These symptoms included difficulty concentrating and headaches that were aggravated by sunlight and lasted for multiple weeks. SFC Williford also suffered sleep disturbances and struggled with severe mood swings.

27. Additionally, while on tower guard with a friend and fellow soldier, SFC Williford witnessed his friend being shot in the shoulder and neck by enemy gunfire.

28. IEDs and firearms are both instrumentalities of war.

29. Upon return from Iraq, SFC Williford was physically and mentally altered by his exposure to combat. He now suffers from combat-related disabilities including PTSD and TBI.

30. SFC Williford's combat-induced PTSD and TBI interfere with his functioning.

31. SFC Williford began experiencing symptoms of PTSD shortly after his second tour of active duty in Iraq. After struggling with his symptoms for a number of years, he positively screened for PTSD at the Kernersville, North Carolina VA clinic in 2009. A formal diagnosis was made in 2010 during his Initial Post-Traumatic Stress Disorder Exam at the Salisbury, North Carolina VA Medical Center. In diagnosing him with PTSD, the VA noted that SFC Williford "did witness and experience traumatic events including actual or threatened death or serious injury to himself and others[.]"

32. SFC Williford struggled to manage his combat-induced PTSD symptoms. He was placed on numerous medications and continued to receive treatment at VA clinics in Winston-Salem, North Carolina, and Fayetteville, North Carolina. None of the medications or appointments provided adequate relief.

33.    After years of seeking treatment, SFC Williford was diagnosed with TBI in 2018. In making the diagnosis, Dr. Robin A. Hurley specifically cited SFC Williford's blast exposures, including injuries from these blasts occurring within one month of each other, which left SFC Williford with no time to recover. Furthermore, responses to a March 2020 disability benefits questionnaire prepared by SFC Williford's neurologist following an in-person examination of SFC Williford were consistent with Dr. Hurley's diagnosis, and specifically noted that SFC Williford was "[e]xposed to 6 separate IED explosions that hit [the] vehicle [the] veteran was riding in and a rocket attack on his barracks." On June 18, 2020, the VA found that SFC Williford's TBI was service connected.

34.    SFC Williford's combat-induced PTSD and TBI symptoms interfere with his daily functioning. For example, between 2014 and 2021, he lost a total of 19 civilian jobs, largely as a result of impulse-control issues associated with his combat-induced PTSD.

**SFC Williford's Physical Evaluation Board Diagnosis and Service Retirement**

35.    On or about January 16, 2019, the PEB found that SFC Williford was physically unfit for duty because of his PTSD and recommended permanent disability retirement with a 70% disability determination. As part of the medical retirement process, his direct commander, Command Sergeant Major Elsa E. Gaver, provided a statement that documented his exposure to blasts.

36.    The PEB noted that "behavioral health evaluators attribute [SFC Williford's PTSD] condition to combat stressors during deployment to Iraq (2004-2005) where the Soldier experienced rocket blasts and witness[ed a fellow] Soldier's death by an enemy sniper."

37.    The PEB unequivocally concluded that SFC Williford's PTSD "disability did result from a combat-related injury under the provisions of 26 USC 104 or 10 USC 10216."

38.     10 U.S.C. § 10216 incorporates by reference the definition of "combat-related" disability" used in 10 U.S.C. § 1413a. Additionally, the definition of "combat-related" in 26 U.S.C. § 104 is substantively identical to the definition of "combat-related" in 10 U.S.C. § 1413a. 26 U.S.C. § 104 defines a "combat-related injury" to mean "personal injury or sickness—(A) which is incurred—(i) as a direct result of armed conflict, (ii) while engaged in extrahazardous service, or (iii) under conditions simulating war; or (B) which is caused by an instrumentality of war." *Id*. Thus, the PEB determined that SFC Williford's PTSD was "combat-related" under the same or substantive equivalent standards as used in the CRSC statute.

39.     The PEB's conclusion that SFC Williford's PTSD is combat-related is plainly correct; the record reflects that SFC Williford's PTSD was caused by his experience with blasts from IEDs and seeing his friend shot by enemy gunfire, both of which involved "armed conflict" and "instrumentalities of war."

40.     On or about June 1, 2022, the VA increased its evaluation of SFC Williford's PTSD from 70% to 100% disabling as of May 9, 2012, citing his persistent issues maintaining employment, among other things.

41.     The VA also currently assigns a 10% service-connected disability as a result of TBI. The VA explicitly determined that SFC Williford's PTSD and TBI were directly related to his military service.

### SFC Williford's Requests for CRSC and the ACRSCB's Denials

42.     On or about July 16, 2019, SFC Williford filed an application for CRSC eligibility for PTSD, bilateral hearing loss, and tinnitus.

43.     On or about September 25, 2019, the ACRSCB denied SFC Williford's application for CRSC in full. The ACRSCB claimed there was a lack of supporting documentation to verify

SFC Williford's combat exposure or any other CRSC qualifying criteria.

44.     After learning of the decision, SFC Williford filed a request for reconsideration with the ACRSCB.

45.     On or about November 17, 2022, the ACRSCB approved SFC Williford's CRSC claim in part. The ACRSCB determined that SFC Williford's tinnitus and bilateral hearing loss were each "Combat-related due to an Instrumentality of War" and granted a 10% combat-related disability for tinnitus and a 10% combat-related disability for bilateral hearing loss.

46.     In making this determination, the ACRSCB explicitly noted that SFC Williford had experienced instrumentalities of war and suffered combat-related disabilities within the meaning of 10 U.S.C. § 1413a.

47.     However, the ACRSCB denied SFC Williford's request for CRSC in relation to his PTSD, writing: "no new medical evidence provided to show combat-related event caused condition."

48.     The ACRSCB gave no reasoned explanation for its conclusion that SFC Williford's tinnitus and bilateral hearing loss disabilities were combat-related, but his PTSD was not. It also gave no reasoned explanation for the divergence between its determination and the PEB's finding, other than citing "differences in program guidance" and a supposed lack of supporting documentation "which confirms your personal exposure to armed conflict[.]"

49.     On or about July 22, 2025, SFC Williford filed another request for reconsideration with the ACRSCB regarding his PTSD and submitted an additional request for CRSC relating to his TBI.

50.     With his reconsideration request, SFC Williford submitted substantial supporting documentation, including: DD Form 214s substantiating his service in Iraq; medical records

reflecting his reports of the combat-related trauma he experienced in Iraq; medical reports from multiple VA clinics diagnosing him with PTSD and describing his treatments; and statements from superior officers, including Regimental Command Sergeant Major Elsa E. Gaver, corroborating SFC Williford's combat-related traumas and associated disabilities. In her statement, Sergeant Gaver wrote, among other things: "SFC Williford was exposed to multiple IED blast[s] while serving in Iraq as a Motor Transport Operator (Truck Driver). SFC Williford experienced direct and indirect blasts that caused a loss of consciousness, memory impairment, resulting panic attacks, social anxiety, depression, inability to maintain relationships and hypervigilance. SFC Williford has demonstrated these associated symptoms and has impaired his duty performance by not being able to adequately teach his students how to conduct convoy operations, IED and route clearance, and vehicle borne attacks due to flashbacks, anxiety and panic attacks."

51.    On or about October 28, 2025, the ACRSCB issued a decision denying SFC Williford's request for CRSC for his PTSD and TBI. The ACRSCB stated it was unable to verify that those disabilities were combat-related and "we did not find documentation which confirms your personal exposure to armed conflict."

52.    The ACRSCB did not give a reasoned explanation why the relevant, credible, and objective documentary evidence SFC Williford provided did not establish that his PTSD and TBI were combat-related. The ACRSCB did not identify any countervailing evidence, or any basis in the text of the CRSC statute or Program Guidance authorizing the ACRSCB to ignore the plainly relevant evidence SFC Williford had submitted.

53.    Additionally, the ACRSCB did not reconcile its prior determination that SFC Williford's tinnitus and bilateral hearing loss were combat-related with its current determination that his other disabilities were not.

54.     The ACRSCB decision also gave no reasoned explanation for the divergence between its determination and the PEB's, other than again citing "differences in program guidance" and a supposed lack of supporting documentation "which confirms your personal exposure to armed conflict[.]" The decision similarly did not grapple with the VA's determination that SFC Williford's PTSD was due to his exposure to direct and indirect blasts during active combat while deployed.

## COUNT 1

**The ACRSCB's Denial of CRSC Benefits was Arbitrary and Capricious, Unsupported by Substantial Evidence, and Contrary to Law**

55.     SFC Williford re-alleges and incorporates by reference the allegations contained in Paragraphs 1-54 above as if fully set forth herein.

56.     The ACRSCB's October 28, 2025, denial of SFC Williford's reconsideration request for CRSC relating to his diagnosed disability of PTSD and TBI was arbitrary, capricious, not supported by substantial evidence, and otherwise not in accordance with law, for reasons including the following:

57.     *First*, the ACRSCB acted arbitrarily, capriciously, and contrary to the CRSC statute and Program Guidance by failing to consider and weigh relevant documentary information.

58.     The Program Guidance applicable to the CRSC program requires that "[d]eterminations of whether a disability is combat-related will be based on the preponderance of available documentary information" and "[a]ll relevant documentary information is to be weighed in relation to known facts and circumstances, and determinations will be made on the basis of credible, objective documentary information in the records[.]" Program Guidance, att. 1, at 9.

59.     SFC Williford submitted significant credible and objective documentary evidence with his July 2025 reconsideration application establishing that his disabilities were combat-

related, including: DD Form 214s corroborating his service in Iraq; a statement from Regimental Command Sergeant Major Elsa E. Gaver, who served as SFC Williford's commander for more than ten years and stated unequivocally that SFC Williford was engaged in overseas combat and was exposed to direct and indirect blasts; medical records documenting statements from SFC Williford describing the combat-related trauma he experienced in Iraq; and a determination by the PEB that SFC Williford's PTSD "did result from a combat-related injury under the provisions of 26 USC 104 or 10 USC 10216".

60.     The ACRSCB's decision letter did not identify any countervailing documentary evidence or find that the evidence in the record highlighted by SFC Williford was not credible and objective.

61.     Instead of engaging with and responding to the evidence that SFC Williford submitted, the ACRSCB listed examples of documentation that it *would* accept, including a "wartime chain of command statement" that "**must be First Sergeant and/or Company Commander or higher**." (Emphasis in original.) Regimental Command Sergeant Major Gaver, who authored a statement, served as SFC Williford's commander and held a rank above First Sergeant. Her statement was provided during the medical retirement process and therefore was authenticated by the Army during SFC Williford's service.  The ACRSCB's disregard of this evidence is arbitrary, capricious, and contrary to law. Nothing in the Program Guidance limits the relevant universe of commander statements. To the contrary, the Program Guidance states that "[a]ll relevant documentary information is to be weighed[.]"

62.     ***Second***, the ACRSCB acted arbitrarily and capriciously by failing to provide a reasoned explanation for its rejection of the PEB's determination that SFC Williford's PTSD is combat-related.

63.     The ACRSCB acknowledged that the PEB had determined that SFC Williford's PTSD is combat-related. The only basis the ACRSCB gave for its divergence from the PEB was boilerplate: "[PEB] determinations are in reference to laws other than CRSC. This means that although the Physical Evaluation Board Proceedings (PEB) states your disability is combat related under 26 USC 104 or 10 USC 10216, your disability does not automatically qualify for CRSC."

64.     This is a distinction without a difference, because the statutes governing PEB determinations define combat-related in a substantively identical manner to the CRSC statute. *Compare* 26 U.S.C. § 104(b)(3)(A)(i) *with* 10 U.S.C. § 1413a(e)(2)(A). Indeed, 10 U.S.C. § 10216 incorporates by cross-reference the 10 U.S.C. § 1413a definition of "combat-related disability."

65.     Moreover, the standard of proof for both the PEB and the ACRSCB is "preponderance of the evidence." *Compare* Program Guidance att. 1, at 9 *with* DoD Instruction 1332.18 (11/10/22), § 6.6.

66.     For these reasons, PEB determinations have long served a significant role in CRSC decisions. For example, the Navy, which is bound to follow the same Program Guidance as the Army, has authored a policy letter stating that: "in the absence of clear and convincing evidence that the PEB's determination was in error, the CRSC Board will adhere to previous PEB determinations . . . in the adjudication of CRSC applications." *See* SECNAVCORB Policy Letter 2012-6 (attached hereto as Exhibit A).

67.     The ACRSCB acted arbitrarily and capriciously in failing to grapple with or provide a reasoned explanation for its rejection of the PEB's determination.

68.     ***Third***, and similarly, the ACRSCB acted arbitrarily and capriciously by failing to grapple with the VA's determination that SFC Williford's PTSD and TBI are combat-related.

69. In establishing service connection for SFC Williford's PTSD, the VA specifically cited, "…in January 2005 you were on a guard tower with your friend when he was shot by a sniper." The VA also cited the following, "…the back of your vehicle was hit in a convoy[.]" Likewise, the VA cited six separate IED and rocket blast exposures in establishing service connection for TBI.

70. While the VA's determination is not binding, the ACRSCB was nonetheless required to consider relevant, credible, and available information provided by the VA supporting that SFC Williford's PTSD was caused by his exposure to gunfire and direct and indirect blasts while in combat. The ACRSCB also did not address why the information provided by the VA was insufficient to establish the necessary combat-related nexus.

71. *Fourth*, the ACRSCB acted arbitrarily and capriciously in that it made no attempt to square its determination that SFC Williford's tinnitus and bilateral hearing loss were combat-related due to an instrumentality of war with its determination that his other disabilities are not.

72. The ACRSCB's determinations in its November 17, 2022, and October 28, 2025, reconsideration decisions that SFC Williford's tinnitus and bilateral hearing loss are combat-related due to an instrumentality of war represent a recognition that SFC Williford suffered combat-related disabilities.

73. Moreover, the combat-related incidents associated with SFC Williford's tinnitus and bilateral hearing loss—including the head trauma that he suffered as a result of IED blasts—are among the same incidents that caused his PTSD and TBI.

74. Nonetheless, the ACRSCB determined that SFC Williford's PTSD and TBI were not combat-related due to an instrumentality of war and that SFC Williford's personal exposure to armed combat could not be confirmed, without providing a reasoned explanation how that

- 15 -

determination could be reconciled with ACRSCB's finding that his bilateral hearing loss and tinnitus disabilities are combat-related due to an instrumentality of war.

## **PRAYER FOR RELIEF**

WHEREFORE, SFC Williford prays that the Court issue an order:

A.  Declaring that the ACRSCB's denial of SFC Williford's application for CRSC was arbitrary and capricious, unsupported by substantial evidence, and contrary to law;

B.  Vacating and remanding the ACRSCB's CRSC determination with instructions to apply the proper legal standards in assessing SFC Williford's CRSC application;

C.  Awarding SFC Williford costs and attorneys' fees; and

D.  Awarding such other relief as the Court deems just and proper.

Dated: August 3, 2026

Respectfully submitted,

/s/ *Caroline M. Mew*
Caroline M. Mew (D.C. Bar No. 467354)
Henry H. Little (D.C. Bar No. 90029639)
ASHURST PERKINS COIE US LLP
700 13th Street NW, Suite 800
Washington, D.C. 20005
Phone: (202) 654-6200
caroline.mew@ashurstperkins.com
henry.little@ashurstperkins.com

Rochelle Bobroff (D.C. Bar No. 420892)
National Veterans Legal Services Program
1100 Wilson Boulevard, Suite 900
Arlington, Virginia 22209
Phone: (202) 621-5709
Rochelle@nvlsp.org

*Counsel for Sergeant First Class Christopher Williford (Ret.)*